# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

**In re**
**STEPHEN A. and**
**PATRICIA L. KOHNER,**

        **Debtors.**

)
)
)
)
)
)
)
)
)
)
)
)

In Chapter 7 proceedings

Case No. 2:13-bk-02159-DPC
Case No. 2:13-bk-02161-DPC

**Joint Administration Under**
**Case No. 2:13-bk-02159-DPC**

Adversary No.: 2: 13-ap-00199-DPC

**LOTHAR GOERNITZ,**

        **Plaintiff,**

    **v.**

**STEPHEN A. and**
**PATRICIA L. KOHNER,** *et al.*

        **Defendants.**

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER GRANTING MOTIONS OF**
**GAMMAGE & BURNHAM AND**
**RONALD AND ANDREW KOHNER TO**
**DISMISS COUNT VII**

(Not for Publication- Electronic Docketing
ONLY) [1]

        The Chapter 7 Trustee Lothar Goernitz ("Trustee") filed his First Amended

Complaint (the "Complaint") against, among others, Defendants Gammage & Burnham,

P.L.C. and its lawyers, James F. Polese and George U. Winney, III (collectively "G&B"),

and Ronald and Andrew Kohner ("Ron and Andrew"). Count VII of the Complaint

alleges that G&B (the Debtors' prebankruptcy counsel), and Ron and Andrew (the

Debtors' relatives), conspired with the Debtors to fraudulently transfer the Debtors'

---

[1] This decision sets forth the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the
Rules of Bankruptcy Procedure. The issues addressed constitute a core proceeding over which this Court
has jurisdiction. 28 U.S.C. §§ 1334(b) and 157(b).

assets. In separate motions, G&B and Ron and Andrew (collectively "Defendants") move to dismiss Count VII of the Complaint. After considering the matter, the Court grants the motions to dismiss Count VII as to Defendants.

## I.     Discussion

Defendants allege they are entitled to dismissal of Count VII under Fed. R. of Civ. P. 12(b)(6)[2] because the Trustee fails to state a claim upon which relief may be granted. The Court may dismiss a defective complaint under Fed. R. Civ. P. 12(b)(6) if it fails to meet the pleading standards of Fed. R. Civ. P. 8,[3] as explained by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009). Fed. R. Civ. P. 8(a)(2) requires that a complaint allege a "short and plain statement of the claim showing that the pleader is entitled to relief."

The Supreme Court, in *Iqbal*, explained that the Rule 8 pleading standard does not require "detailed factual allegations, but requires more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 1949. A bare allegation of legal liability is insufficient. *Id.* at 1950. Likewise, a plaintiff must do more than allege that each element required to make out a claim is satisfied. *Id.* at 1949. Instead, a plaintiff must allege factual matter that, if taken as true, is sufficient "to state a claim to relief that is plausible on its face." *Id.* The plaintiff need not show that a defendant is probably liable; only that liability is plausible. *Id.*

Defendants contend that Count VII should be dismissed because: (1) the Complaint fails to plead a claim for conspiracy to commit fraudulent transfers; (2) the

---

[2] Fed. R. Bankr. P. 7012(b) makes Fed. R. Civ. P. 12(b) applicable in adversary proceedings.
[3] Fed. R. Bankr. P. 7008(a) makes Fed. R. Civ. P. 8 applicable in adversary proceedings.

Case 2:13-ap-00199-DPC    Doc 184    Filed 09/11/14    Entered 09/11/14 16:12:34    Desc
Main Document    Page 2 of 16

Trustee has no standing to seek relief under Count VII or is barred by the doctrine of *in pari delicto* from doing so; and (3) Arizona does not recognize liability for conspiracy to commit fraudulent transfers. G&B also contends it cannot, as a matter of law, conspire with its clients. Additionally, Ron and Andrew contend dismissal is appropriate because, after the Trustee filed the Complaint, RLK Family Limited Partnership ("RLK"), the transferee of the alleged fraudulent transfers, transferred to the Trustee all of the assets it had received through the 2013 Settlement Agreement.

A.  Adequacy of Pleading

Although paragraph 4 of Count VII alleges that "[t]he Conspirators aided and abetted Fraudulent Transfers" (Dkt. #37 at 48:16), at oral argument Trustee's counsel acknowledged the Trustee is pursuing a claim for conspiracy to commit fraudulent transfers, not aiding and abetting fraudulent transfers. The Court, therefore, need not address any issues pertaining to aiding and abetting fraudulent transfers, except to the extent Defendants urge the applicability by analogy of aiding and abetting case law to the conspiracy claims set forth in Count VII.[4]

---

[4] Conspiracy and aiding and abetting are separate theories of liability. *See Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, at 36-37 (Ariz. 2002). However, liability under either theory requires two or more participants. *See id.* at 36; *see also United States v. Avila-Maxia*, 577 F.2d 1384, 1390 at n. 5 (9th Cir. 1978). G&B contends that it cannot conspire with its clients as a matter of law because, under Arizona law, a lawyer is an agent of his client so that "a client and lawyer, acting in an agency relationship, constitute a single entity," citing *American Family Mut. Ins. Co. v. Zavala*, 302 F. Supp. 2d 1108, 1121 (D. Ariz. 2003). However, the Court agrees with the Trustee when he claims that fraud, collusion or a malicious or tortious act, such as conspiring with the Debtors in making fraudulent transfers, goes outside the attorney's agency relationship. *See Southern Union Co. v. Southwest Gas Corp.*, 165 F. Supp. 2d 1010, 1016 (D. Ariz. 2001) ("[A]n attorney may be liable for conspiracy if the attorney 'acts out of a self-interest which goes beyond the agency relationship.' . . . Likewise, 'an attorney may be liable to a third person for acts arising out of the attorney's representation of a client, if the attorney is guilty of 'fraud, collusion, or a malicious or [intentionally] tortious act.'") (citations omitted). This qualification to an attorney's agency relationship does not conflict with *Zavala*. *See Zinni v. Jackson White, PC*, 565 Fed.Appx. 613 (9th Cir. 2014) (citing *Zavala* in dismissing tort claim against attorney, but noting, "[t]he only portion of Defendants' alleged conduct *that plausibly could be read to stand outside the agency relationship* is an allegedly improper assumption of a power of attorney."). Therefore, attorneys, such as G&B, may be liable for conspiring with their clients to commit fraudulent transfers to the extent the attorneys acted outside the scope of their agency relationship.

The Court finds that the Complaint does not plead facts sufficient to establish the elements of a claim for conspiracy to commit a fraudulent transfer. "A claim for civil conspiracy must include an actual agreement, proven by clear and convincing evidence ...." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 37 (Ariz. 2002). The Complaint fails to allege any facts which would establish an actual agreement between the Debtors and G&B or between the Debtors and Andrew or Ron to commit a fraudulent transfer. The Trustee contends that, although not specifically pled, the existence of an agreement may be proven by circumstantial evidence. However, "[i]n pleading conspiracy liability, a plaintiff must at minimum allege some facts showing the elements of a conspiracy, including the requisite agreement between defendants." *Barba v. Seung Heun Lee*, 2009 WL 8747368, at *8 (D. Ariz. 2009). Moreover, when a claim for conspiracy is based on fraud, the complaint must state with particularity the circumstances constituting fraud under Rule 9(b).[5] *Wasco Products, Inc. v. Southwall Technologies*, 435 F.3d 989, 990-91 (9th Cir. 2006). This Court finds the Trustee failed to state a claim for conspiracy to commit fraudulent transfers against Defendants because the Complaint fails to even allege the existence of an agreement between the Debtors and Defendants to commit a fraudulent transfer. Dismissal of Count VII on these grounds is without prejudice to the Trustee seeking leave to amend the complaint if he believes he has grounds to assert the existence of an agreement to commit a fraudulent transfer.

Ordinarily, the Court's analysis of a motion to dismiss would end once it finds a basis to grant the motion. However, because this is a very hotly contested matter and the

---

[5] Fed. R. Bankr. P. 7009 makes Fed. R. Civ. P. 9 applicable in adversary proceedings.

parties have set forth numerous interesting arguments in support of or in opposition to the motions, the Court provides below its analysis of these various theories.

### B. Trustee's Standing and the Doctrine of *In Pari Delicto*.

Defendants contend that Count VII should be dismissed because the Trustee does not have standing to pursue damages for Defendants' alleged conspiracy to make fraudulent transfers, and that the Trustee is barred by the doctrine of *in pari delicto* from asserting such claims.

Defendants primarily rely on the language of § 544(b) in support of their claim that the Trustee lacks standing to pursue Count VII. The court in *Hamilton Taft & Co. v. Howard, Weil, Labouisse, Friedrichs Inc*. held that "[a] trustee's only authority to assert creditor's state-law causes of action related to fraudulent conveyances is found in section 544(b) of the Bankruptcy Code." 176 B.R. 895, 902 (Bankr. N.D. Cal. 1995), *aff'd on other grounds*, 196 B.R. 532 (N.D. Cal. 1995), *aff'd*, 114 F.3d 991 (9th Cir. 1997). The *Hamilton* court went on to reason that a claim for damages under an aiding and abetting fraudulent transfer theory is a cause of action related to fraudulent conveyances that must be asserted under § 544(b). *Id*. However, because § 544(b) only allows a trustee to *avoid* a fraudulent transfer, the trustee lacked standing to claim damages for aiding and abetting. *Id*. (citing *Elliott v. Glushon*, 390 F.2d 514, 516 (9th Cir. 1967)). This court finds *Hamilton*'s logic is no less forceful concerning an action brought by a trustee regarding an alleged conspiracy to commit fraudulent transfers.

G&B also relies on the doctrine of *in pari delicto* to argue that the Trustee does not have standing to assert a cause of action on behalf of the Debtor. "[Under] *in pari delicto,* the Debtor, as an alleged co-conspirator, would not be able to maintain a cause of

Case 2:13-ap-00199-DPC    Doc 184    Filed 09/11/14    Entered 09/11/14 16:12:34    Desc
Main Document    Page 5 of 16

action for civil conspiracy and name either himself or a co-conspirator as a defendant." *See In re Gaudette*, 241 B.R. 491, 500-01 (Bankr. D. N.H. 1999). G&B reasons that the Trustee, standing in the Debtors' shoes, lacks standing to assert a cause of action against G&B for its alleged conspiracy and participation in the fraudulent transfers that the Debtors purportedly induced. *See Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 434, 92 S. Ct. 1678, 1688 (1972) (a trustee may only maintain an action against a third party that could have been brought by the debtor); *see also In re A.R. Baron & Co., Inc.*, 280 B.R. 794, 800 (Bankr. S.D.N.Y. 2002) ("For a trustee to have standing to pursue a claim against a third party, he must allege that the third party has injured the debtor in a manner distinct from injuries suffered by the debtor estate's creditors.").

The Trustee does not appear to dispute that he lacks standing to assert a claim for conspiring to commit a fraudulent transfer on behalf of the Debtor under § 544(b) or §548. Instead, the Trustee contends that he has standing to pursue Count VII under §544(a) on behalf of a hypothetical lien creditor for damages from Defendants' alleged liability for conspiracy to commit fraudulent transfers. Since the Trustee would be asserting claims under §544(a) standing in the shoes of the Debtors' creditors, the *in pari delicto* defense would not apply to such claims. *PMSC, Inc. v. Porter (In re Porter McLeod, Inc.)*, 231 B.R. 786, 425-26 (D. Colo. 1999). Therefore, the issue of whether the Trustee has standing to pursue Count VII turns on whether the Trustee can bring a claim for conspiracy to commit fraudulent transfers under § 544(a) on behalf of a hypothetical lien creditor or whether the Trustee is limited to bringing the claim under § 544(b) on behalf of the Debtor.

Section 544(a) provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the *rights and powers* of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor [. . . ] and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, [. . . ];

(2) a creditor that extends credit to the debtor [. . .] and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, [. . .]; or

(3) a bona fide purchaser of real property [. . .]

11 U.S.C. § 544(a)(emphasis added).

Congress granted these "rights and powers" [under § 544(a)] primarily to facilitate a trustee's pursuit of leviable assets. Section 544(a)(2) was particularly intended to give a trustee, standing in the shoes of a creditor that has already exhausted available legal remedies, power to pursue equitable remedies in the context of discovery.

*In re Viola*, 469 B.R. 1, 7 (9th Cir. BAP 2012) (citing S. Rep. No. 89-1159 (1965), *reprinted in* 1966 U.S.C.C.A.N. 2032, at 2466)).

The Trustee relies on *In re Southwest Supermarkets, LLC*, 325 B.R. 417 (Bankr. D. Ariz. 2005) to contend that the rights and powers granted to a trustee under § 544(a) provide the Trustee with standing to pursue Count VII against Defendants. The bankruptcy court in *Southwest Supermarkets* stated that, "[w]hile it is usually thought that § 544(a) merely provides the trustee with avoiding powers, particularly the power to avoid unrecorded or secret liens, there is good authority that it was also intended to provide trustees with some affirmative rights of recovery." *Id*. at 425. The court went on to explain that some affirmative rights of recovery could include a trustee standing in the

7

shoes of a hypothetical creditor to bring a creditors' bill asserting causes of action belonging to the debtor. *Id*. The Trustee asserts that Count VII is another affirmative right of recovery that the Trustee has standing to bring under § 544(a). While this Court tends to agree the "rights and powers" language of §544(a) appears to grant trustees the authority to sue on claims otherwise held by such creditors, there are a number of reasons the Court is constrained from so holding.

*Southwest Supermarkets*' reference to § 544(a)'s "affirmative rights of recovery" beyond avoiding powers is largely dicta. Instead, *Southwest Supermarkets* merely turned on § 544(a)'s effect on the limitation period applicable to the trustee's breach of fiduciary duty and fraudulent transfer claims. *Id*. at 426-27. Moreover, the court in *Southwest Supermarkets* noted that "the Trustee's standing under § 544(a)(2) to bring a creditors' bill only permitted the Trustee to assert causes of action that the debtor corporation could have asserted." *Id*. at 425. The holding of *Southwest Supermarkets* is a narrow one that does not undercut the Supreme Court's holding in *Caplin* that a trustee may only maintain an action against a third party that could have been brought by the debtor. *See Caplin v. Marine Midland Grace Trust Co*., 406 U.S. 416, 434 (1972).

More importantly, "[i]n the Ninth Circuit, 'it is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the [debtor] itself.'" *In re Viola*, 469 B.R. 1, 8 (9th Cir. BAP 2012) (quoting *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir. 2005)). In *Viola,* the trustee sued a creditor for aiding and abetting fraudulent transfers under § 544(a)(2). *Viola*, 469 B.R. at 4. The Ninth Circuit BAP applied *Caplin,* adopted by the 9th Circuit in *Williams v. California 1st Bank*, 839 E. 2d 664 (9th Cir. 1988), to

conclude that the trustee did not have standing to pursue an aiding and abetting fraudulent transfer claim because, while §544(a)(2)'s strong arm powers may go beyond mere avoidance powers, "they do not establish [the trustee's] right to a claim for relief . . . under Ninth Circuit precedent." *Viola*, 469 B.R. at 7-8. The BAP reasoned that investors were the real parties in interest because the investors, rather than the debtor, had a claim against the third party, despite the fact that some investors had assigned their claims to the trustee. *Id*. at 8. There was a risk of inconsistent judgments if the trustee was allowed to go forward with her suit and the creditors themselves brought actions outside of bankruptcy. *Id*.

Similar to *Viola*, in this case the Debtors' creditors are the real parties in interest who may have claims against Defendants for conspiring with the Debtors to commit fraudulent transfers. If the Court granted the Trustee the ability to sue Defendants on behalf of creditors there would be a potential for inconsistent judgments. Creditor RES-AZ has filed a separate action in state court against G&B asserting allegations similar to those in the Complaint. G&B removed that action initiated by RES-AZ to this Court, but RES-AZ has since moved to remand. The Court heard oral argument on the motion to remand and has taken the matter under advisement. If that matter is remanded to state court, there is a risk of inconsistent judgments against G&B. *See id.* (adopting the *Williams* court's concern that "the potential for inconsistent actions . . . potentially creat[es] a conflict of interest and the proliferation of litigation." *Williams v. California 1st Bank*, 859 F.2d 664, 667 (9th Cir. 1988)).

The Trustee attempts to distinguish *Viola* on the basis that the claims in that case were personal to certain creditors and that he is, instead, attempting to pursue claims

belonging to all creditors in this case. The Trustee cites *Koch Ref. v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1348-49 (7th Cir. 1987) and *Dana Molded Prods., Inc. v. Brodner*, 58 B.R. 576, 578 (N.D. Ill. 1986) for the proposition that a trustee is the real party in interest and has standing to pursue claims belonging to all creditors. The Seventh Circuit, however, rejected *Koch*'s distinction between "personal" and "general" claims:

> That is not an illuminating usage. The point is simply that the trustee is confined to enforcing entitlements of the [debtor]. He has no right to enforce entitlements of a creditor. He represents the unsecured creditors of the [debtor]; and in that sense when he is suing on behalf of the [debtor] he is really suing on behalf of the creditors of the [debtor]. But there is a difference between a creditor's interest in the claims of the [debtor] against a third party, which are enforced by the trustee, and the creditor's own direct-not derivative-claim against the third party, which only the creditor himself can enforce.

*Steinberg v. Buczynski*, 40 F.3d 890, 893 (7th Cir. 1994). "Put another way, 'when creditors . . . have a claim for injury that is particularized as to them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so.'" *In re Bernard L. Madoff Inv. Secs. LLC*, 740 F.3d 81, 88 (2d Cir. 2014) (quoting *Hirsch v. Arthur Andersen & Co*., 72 F.3d 1085, 1093 (2d Cir. 1995)). Furthermore:

> [T]he distinction made by the *Koch* court and its progeny between "personal" and "general" creditors' claims is without real difference. In either case, the trustee would be placed in the position of pursuing a claim that does not belong to the estate and that does not arise as a result of an injury to the debtor corporation.

*In re Greater Southeast Cmty. Hosp. Corp.*, 333 B.R. 506, 519 (Bankr. D. Colo. 2005). In this Court's estimation, the mere fact that the Trustee may be pursuing claims of creditors generally, as opposed to pursuing the claims of a specific creditor, does not give the Trustee standing to pursue claims of such creditors.

In *In re Motorwerks, Inc.,* 371 R.R. 281 (Bankr. S.D. Ohio 2007), Bankruptcy Judge Walter points to yet another problem with the trustee's standing to pursue creditors' claims under § 544(a). There, the court noted that the legislative history pertaining to §544 reveals a subsection (c) was originally proposed and would have explicitly overruled *Caplin.* However, that subsection "was deleted by Congress prior to enactment thereby raising the reasonable inference that Congress did not intend to overrule Caplin by enacting § 544." *Id*. at 291. Judge Walter went on to dismiss the trustee's claims noting that "§ 544(a) does not confer standing on a trustee to bring creditors' tort actions under state law such as the Trustee's aiding and abetting claims in this case." *Id*. This holding is consistent with case law in the 9th Circuit.

The risk of inconsistent judgments together with the legislative history behind § 544(a) and persuasive Ninth Circuit and BAP precedent lead this Court to find the Trustee does not have standing to pursue claims for conspiring to commit fraudulent transfers against Defendants. The Court hereby grants Defendants' motions to dismiss Count VII with prejudice.

C. <u>Cause of Action for Conspiracy to Commit Fraudulent Transfers</u>

Defendants contend Arizona courts would no longer recognize a cause of action for conspiring to commit a fraudulent transfer. The Arizona Court of Appeals in *McElhanon v. Hing*, 728 P.2d 256 (Ariz. App. 1985) held that conspiracy to commit a fraudulent conveyance is a cause of action that exists independent and apart from the Uniform Fraudulent Conveyance Act (the "UFCA"). *McElhanon*, 728 P.2d at 263. After

11

the *McElhanon* decision, Arizona adopted the Uniform Fraudulent Transfer Act (the "UFTA") in 1990.[6]

Defendants rely on two decisions, *Mann v. GTCR Golder Rauner, L.L.C.*, 483 F. Supp. 2d 864 (D. Ariz. 2007) and *Moore v. Browning*, 50 P.3d 852 (Ariz. App. 2002), both decided after Arizona adopted the UFTA, to contend that a cause of action for conspiring to commit a fraudulent transfer did not survive the adoption of the UFTA. The court in *Moore* found that the UFTA "displaced any common law cause of action for fraudulent conveyance . . . ." *Moore*, 50 P.3d at 857-58. The *Mann* court stated that "there is no independent cause of action for aiding and abetting a fraudulent transfer under the UFTA." *Mann*, 483 F. Supp. 2d at 881.[7]

This Court does not find *Moore* to refute the Trustee's contention that a claim for conspiring to commit a fraudulent transfer is a cause of action that exists independent of the UFTA. The cause of action at issue in *Moore* was a claim for a fraudulent transfer against the debtors, both under common law and the UFTA. Thus, the *Moore* court's holding that the UFTA "displaced any common law cause of action for fraudulent

---

[6] G&B also attempts to distinguish this case from *McElhanon* because the attorney in *McElhanon* received the property which was the subject of the fraudulent transfer whereas the Complaint does not allege that G&B received any property. However, *McElhanon* does not require that a party who received the transferred monies be subject to a claim for conspiring to commit a fraudulent transfer. *See McElhanon*, 728 P.2d at 392. In fact, the attorney in *McElhanon* merely held the property as collateral and title to the fraudulently transferred property which was later conveyed to the creditor's former business partner, not the attorney. *Id*. at 390. G&B also criticizes *In re Hashim*, 356 B.R. 728 (Bankr. D. Ariz. 2007) for citing to the UFCA rather than the UFTA which was enacted prior to the *Hashim* decision. While the Court does not know why *Hashim* cited to the UFCA, the Court agrees with the Trustee that it is likely *Hashim* cited to the UFCA because *Hashim* relied on *McElhanon*, which was decided prior to the enactment of the UFTA.

[7] G&B also cites *Sell v. Gama*, 295 P.3d 421, 425-26 (Ariz. 2013) as support for its argument that common law causes of action for conspiring to commit a fraudulent transfer do not survive the adoption of the UFTA. In *Sell*, the Arizona Supreme Court cited *Mann* to interpret the Arizona Securities Act ("ASA") as eliminating any common law cause of action for aiding and abetting liability under the ASA. However, *Sell* did not address whether a cause of action for aiding and abetting a fraudulent transfer common law cause of action survived the adoption of the UFTA. The *Sell* decision is, therefore, not relevant to the Court's analysis in this case, particularly in the context of conspiring to commit (as opposed to aiding and abetting) fraudulent transfers.

Case 2:13-ap-00199-DPC    Doc 184    Filed 09/11/14    Entered 09/11/14 16:12:34    Desc
Main Document    Page 12 of 16

conveyance" was limited to only fraudulent transfer claims and did not address whether a common law cause of action for conspiring to commit a fraudulent transfer survived the adoption of the UFTA.[8] *See Moore*, 50 P.3d at 857-58.

This Court also does not find *Mann* applicable to the facts before this Court. The *Mann* court only appeared to find "no cause of action for aiding and abetting a fraudulent transfer [existed] *under* the UFTA." *See Mann*, 483 F. Supp. 2d at 881 (emphasis added). *Mann* does not refute the Trustee's argument that a claim for conspiring to commit a fraudulent transfers exists under common law (i.e. under *McElhannon v. Hing, supra*), separate from the UFTA.

The court in *McElhanon* held that conspiracy to commit a fraudulent transfer is a cause of action that exists under common law, separate and apart from the UFCA. *McElhanon v. Hing*, 728 P.2d 256, 263 (Ariz. App. 1985). UFCA § 11 provided that "[i]n any case not provided for in this Act the rules of law and equity including the law merchant, and in particular the rules relating to the law of principal and agent, and the effect of fraud, misrepresentation, duress or coercion, mistake, bankruptcy or other invalidating cause shall govern." Similarly, the UFTA provides in § 10 that, "unless displaced by the provisions of this [Act], the principles of law and equity, including the law merchant and the law relating to principal and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency, or other validating or invalidating cause, supplement its provisions."[9] The *Mann* court did not focus on UFTA § 10 in coming to its decision. *See Mann v. GTCR Golder Rauner, L.L.C.*, 483 F. Supp.

---

[8] Defendants criticize the *Hashim* decision because it relies on *McElhanon* and "inexplicably nowhere cites *Moore*." However, the *Moore* decision did not address the issue of whether a claim for conspiracy to commit a fraudulent transfer is recognized in Arizona and, instead, dealt with a claim for a fraudulent transfer. Thus, it was reasonable for Judge Case to not cite *Moore* in the *Hashim* decision.

[9] UFTA § 10 is incorporated as A.R.S. § 44-1010.

2d 884, 918-919 (D. Ariz. 2007) (interpreting that Act's "catch-all provision" in A.R.S. § 44-1007(A)(4)(c) to not permit a cause of action for aiding-abetting liability). However, the Court finds that UFTA § 10 is substantially similar to UFCA § 11 so that the common law cause of action for conspiring to commit a fraudulent transfer survives the adoption of the UFTA just like the *McElhanon* court found that it did under the UFCA.

Well after Arizona adopted the UFTA, the court in *In re Hashim*, 356 B.R. 728 (Bank. D. Ariz. 2007) relied on *McElhanon* to find that Arizona recognized a cause of action for conspiracy to commit fraudulent transfers. *Id.* at 740. This Court interprets the *McElhanon* and *Hashim* decisions to find that a cause of action for conspiring to commit a fraudulent transfer is still recognized in Arizona and exists independent of the UFTA, thereby surviving its adoption. Like the court in *Hashim*, this Court finds that a cause of action for conspiring to commit a fraudulent transfer occurs where the following elements are proven: (a) a fraudulent transfer made with the intent to hinder, delay or defraud creditors; (b) an agreement between two or more persons to commit the fraudulent transfer; (c) damages resulting from the transfer that are traceable to the conspiracy; and (d) inadequate equitable remedies available under the UFTA. *Id.* at 739. Such claim must be proven by clear and convincing evidence. *Id.* at 743; *see also Dawson v. Withycombe*, 216 Ariz. 84, 163 P.3d 1034, 1053 (Ariz. App. 2007).

Accordingly, the Court finds that a common law cause of action for conspiring to commit a fraudulent transfer is recognized in Arizona and exists independently from, and despite the enactment of, the UFTA.

D. Assets Transferred Back to the Estate

Ron and Andrew argue there can be no claim against them for conspiracy to commit a fraudulent transfer where the transferee, RLK, transferred the assets to the Trustee after the Trustee filed the Complaint. This is precisely the issue RLK raised in its motion for summary judgment argued before this Court on August 28, 2014. This argument ignores the possibility that the assets transferred to the Trustee may have decreased in value since the date of the initial transfer to RLK. As the Court noted at the summary judgment hearing, the Court agrees that Section 550 of the Code suggests a preference for recovery of the property which is the subject of the claimed fraudulent transfer rather than a judgment awarding the full value of the property transferred. *See In re Roca*, 404 B.R. 531, 546 (Bankr. D. Ariz. 2009) and *Matter of Farmer*, 209 B.R. 1022, 1025 (Bankr. M.D. Ga. 1997). However, if the Trustee proves the transferred assets diminished in value between the date of the initial transfer and the date of RLK's May 2014 transfer to the Trustee, a money judgment would likely be the appropriate remedy but only to the extent of the diminution in value of the assets transferred. *In re Straightline Invs., Inc.*, 525 F.3d 870, 883 (9th Cir. 2008). For this reason, the Trustee's claims against Defendants are hereby dismissed on this ground, but only to the extent that the May 2014 value of the assets RLK transferred to the Trustee was equal to or greater than the value of such assets in January 2013. If the May 2014 value falls short of the value of the assets Debtors transferred to RLK in January 2013, this Order does not dismiss the Trustee's claims against Defendants under this theory.

## II.    Conclusion

Although the Court notes that Arizona recognizes the validity of a cause of action for conspiring to commit a fraudulent transfer, and that RLK's transfers to the Trustee are

not alone enough to fully defeat liability if the transferred assets decreased in value, the Court finds the Complaint fails to sufficiently plead a cause of action for conspiracy to commit fraudulent transfers. The Court also finds that the Trustee does not have standing to assert a claim for conspiracy to commit a fraudulent transfer. For these reasons, it is ordered that Count VII of the Complaint is hereby dismissed with prejudice.

**So ordered.**

**DATED:**       **September 11, 2014**

_____
DANIEL P. COLLINS
CHIEF UNITED STATES BANKRUPTCY JUDGE

**COPY**  of the foregoing mailed by the BNC and/or
sent by auto-generated mail to:

Interested parties