**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: | ) Involuntary Chapter 7 Proceedings |
| | ) Jointly Administered |
| **STEPHEN A. KOHNER and** | ) |
| **PATRICIA L. KOHNER, husband and** | ) Case No.: 2:13-bk-02159-DPC |
| wife, | ) Case No.: 2:13-bk-02161-DPC |
| Debtors. | ) |
| | ) |
| | ) Adversary No. 2:13-ap-00199-DPC |
| | ) |
| | ) **ORDER DENYING GAMMAGE &** |
| **LOTHAR GOERNITZ, Chapter 7** | ) **BURNHAM'S MOTION FOR** |
| **Trustee,** | ) **RECONSIDERATION** |
| Plaintiff, | ) |
| | ) |
| v. | ) **NOT FOR PUBLICATION** |
| | ) |
| **STEPHEN A. KOHNER and** | ) |
| **PATRICIA L. KOHNER, et al.,** | ) |
| Defendants. | ) |

Special Counsel to Chapter 7 Trustee Lothar Goernitz opened this adversary proceeding via removal of a lawsuit from state court. Trustee subsequently twice amended the Complaint. Defendants Gammage & Burnham, PLC and James Polese twice moved to dismiss these two iterations of the Trustee's Complaint. After briefing and oral argument, the Court subsequently denied Defendants' Motion to Dismiss the Second Amended Complaint. Defendants moved the Court to reconsider its Order denying their Motion to Dismiss. After briefing and oral argument, the Court took Defendants' Motion for Reconsideration under advisement. The Court now denies the Motion for Reconsideration.

**I. Background**

The entire procedural and factual background of this case is long and complex. For sake of ease, the Court provides an abridged procedural background below.[1]

…

---

[1] The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

1

### A. First Amended Complaint

Creditors of Stephen Kohner ("Debtor") filed an involuntary chapter 7 petition against him on February 19, 2013. On that same date, Citno Loan LLC and Nocit Loan LLC ("Loan LLCs") removed their state-court lawsuit against Debtor to this Court. Chapter 7 Trustee Lothar Goernitz ("Trustee") subsequently retained the Loan LLCs' attorneys as special counsel. On February 17, 2014, the Trustee filed his First Amended Complaint ("FAC") (DE 37) against Gammage & Burnham, PLC and James Polese (collectively "G&B"),[2] Debtor, and other defendants.[3] Count 7 of the FAC alleged G&B conspired with Debtor to commit fraudulent transfers as part of a complex asset-protection scheme ("Count 7" or "FAC Count 7"). G&B moved to dismiss Count 7 on the grounds that Trustee lacked standing to pursue the conspiracy claim (DE 56).[4] The Court granted G&B's Motion to Dismiss Count 7 with prejudice (DE 184), and later granted Trustee time to amend the FAC (DE 187).

### B. Second Amended Complaint

Trustee filed the Second Amended Complaint ("SAC") on November 17, 2014 (DE 202). Count 5 of the SAC alleges G&B committed malpractice by failing to disclose various conflicts of interest and for subjecting Debtor's entities to unnecessary liability ("Count 5" or "SAC Count 5"). G&B filed its Motion to Dismiss Count 5 ("MTD") on December 22, 2014 (DE 222). Trustee responded (DE 232), and G&B replied (DE 245).

### C. Order Denying the MTD

After briefing and oral argument, the Court took the MTD under advisement (DE 263). The Court denied the MTD on May 7, 2015 (DE 277), stating that "[t]he Court's Order dismissing FAC Count 7 with prejudice was not a final ruling on the merits of that

---

[2] G&B was Debtor's pre-bankruptcy counsel.
[3] All docket entry cites refer to the docket in the adversary proceeding, 2:13-ap-00199-DPC, unless otherwise noted.
[4] Count 7 was the only count of the FAC that named G&B as defendants.

claim," (DE 277 at 9:17–18) and holding that claim preclusion did not bar Trustee from alleging malpractice in Count 5. The Court reasoned that, because standing was a threshold issue, Trustee's lack of standing to bring FAC Count 7 prevented the Court from exercising jurisdiction over that claim. The Court held G&B's claim-preclusion defense to Count 5 failed because there had been no final ruling on the merits. The Court declined to address the parties' arguments on the identity-of-claims element of claim preclusion. The Court also rejected the MTD's argument that Count 5 failed to state a claim for malpractice due to the alleged impossibility of damages to the estate under the Trustee's alternative theories.

### D. Motion for Reconsideration

On May 14, 2015, G&B filed a Motion for Reconsideration ("MFR") (DE 282) of the Court's denial of the MTD as to its claim-preclusion and damages arguments. Trustee responded (DE 288), and G&B replied (DE 289). The Court heard oral argument and took the MFR under advisement on July 6, 2015 (DE 294).

## II. The Parties' Arguments

### A. G&B's Arguments for Reconsideration

#### 1. The Court Erred in Failing to Give Previous Dismissal Preclusive Effect

G&B makes two arguments in its MFR. First, it argues the Court erred in not giving preclusive effect to its Order Dismissing FAC Count 7. G&B asserts the Court relied on flawed legal reasoning in holding that Trustee's lack of standing to bring FAC Count 7 prevented the Court from exercising jurisdiction over the claim and from reaching a decision on the merits. G&B urges that this reasoning denying the MTD's claim-preclusion argument incorrectly treated the prior dismissal of FAC Count 7 as one for lack of <u>Article III</u> standing. In fact, G&B argues, the Court's dismissal of FAC

Case 2:13-ap-00199-DPC    Doc 299    Filed 08/19/15    Entered 08/19/15 09:43:35    Desc
Main Document    Page 3 of 11

Count 7 was for lack of <u>statutory</u> standing under § 544(a).[5]  The distinction is important because, in the Ninth Circuit, dismissals for lack of statutory standing qualify as Rule 12(b)(6) dismissals for failure to state a claim and have preclusive effect.  Alternatively, dismissals for lack of Article III standing qualify as Rule 12(b)(1) dismissals for want of subject matter jurisdiction and do not have preclusive effect.  *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009).

### 2. *Trustee Did Not Adequately Plead Damages*

G&B also argues the Court erred in not dismissing Count 5 for failure to state a claim because Trustee did not effectively plead viable alternative theories of damages responsive to Trustee's alter-ego allegations.   G&B notes that Count 5 expressly incorporated <u>all</u> of the allegations pleaded in the portion of the SAC before Count 5, thus undermining Trustee's argument that he can and did plead in the alternative.  Even if Trustee had properly pleaded in the alternative, G&B argues that it would not matter because there could not have been damages to the estate under either theory.  If Trustee succeeds in proving alter ego as to both the Sandra Treese Trust ("STT") and various other entities, there were no damages because the money, in effect, never left Debtor's pocket.  On the other hand, if Trustee fails to establish alter ego, there was no damage to the estate because it was <u>the entities</u>, not Debtor, that transferred the money.

### B.  Trustee's Arguments against Reconsideration

### 1. *G&B Fails to Meet Necessary Showing for Reconsideration*

Trustee denies that G&B's MFR establishes grounds for reconsideration under either Ninth Circuit or District of Arizona precedent, and argues that the MFR merely restates arguments G&B made in its MTD.

…

…

---

[5] All section references refer to the Bankruptcy Code, Title 11 of the United States Code, unless stated otherwise.

### 2. Record Supports Court's Ruling Despite Any Error

In response to G&B's argument regarding the legal distinction between dismissals for lack of statutory/Article III standing, Trustee contends that rulings can be upheld on appeal "for any reason supported by the record," *In re Harris*, 279 B.R. 254, 261 (9th Cir. BAP 2002), "even if the Court erred on the issue . . . ." Resp. to MFR at 5:14 (DE 288). Trustee urges that the Court's prior dismissal did not establish any rights or interests that would affect Trustee's malpractice claim and that Count 5 does not share an identity of facts with Count 7. Thus, the Trustee contends, the record supports the Court's ruling on the MTD.

### 3. G&B Fails to Account for All Possible Alter-Ego Outcomes

Trustee next argues that G&B's no-damages argument fails to account for the possibility that Trustee will succeed on some of the alter-ego claims but not on others. For example, Trustee could succeed in collapsing the entities but not STT. In that case, Trustee <u>would</u> have a viable claim for damages, because the entities'/Debtor's transfer of money to STT and/or assumption of liabilities could constitute the requisite damages of a malpractice claim.

## III. Law

### A. Standard for Motions for Reconsideration

"Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "The Court has discretion to reconsider and vacate a prior order." *Motorola, Inc. v. J.B. Rodgers Mech. Contractors*, 215 F.R.D. 581, 582 (D. Ariz. 2003) (citations omitted).

The United States District Court for the District of Arizona has adopted the following standards governing when it is appropriate to grant a motion for

reconsideration: (1) material change in the facts or law between when a party presented them to the Court and the time of the Court's decision, and the party could not have known of such changes through reasonable diligence; (2) material change in the facts since the Court's decision; (3) material change in law since the Court's decision; or (4) the moving party convinces the Court that it "failed to consider material facts" previously presented. *Id.* at 586. "No motion for reconsideration shall repeat in any manner any oral or written argument made in support of or opposition to the original motion." *Id.*

## IV. Analysis

### A. No Basis for Reconsideration of G&B's Damages Argument

G&B's MFR argues that Count 5 is not viable and should be dismissed for failure to state a plausible claim for damages under Trustee's alter-ego theories. MFR at 2:9–10, 2:25–3:4 (DE 282) ("Any way you skin the cat, Trustee has failed to allege a viable theory of damages in support of his legal malpractice claim."). In doing so, the MFR restates arguments G&B made in its MTD and in its Reply. MTD at 2:23–3:7, 3:14–16 (DE 222) (arguing the SAC fails to plead damages because either (1) the entities sustained the damages instead of Debtor, or (2) the transfer to STT did not move the assets beyond Debtor's control); Reply at 10:1–21, 11:6–21 (same) (DE 245). The MFR impermissibly reargues these points, and does not provide any alternative grounds on which the Court should grant relief. These arguments fail to acknowledge the possibility that Trustee could succeed on some alter-ego claims but not on others. This would mean that some of the entities would have damages. Additionally, at oral argument on the MFR, G&B seemed to concede that the SAC alternatively pleaded damages well enough to put G&B on notice of Trustee's claims. The Court denies G&B's MFR as to these arguments.

…

6

<u>B. The Court's Error Does Not Change the Outcome</u>

G&B in its MFR correctly points out that a dismissal for lack of statutory standing is a final ruling on the merits for preclusion purposes, while a dismissal for lack of Article III standing is not. The MFR convinces this Court that its Order Granting G&B's Motion to Dismiss FAC Count 7 was truly a final ruling on the merits in that it was a dismissal based on a lack of statutory standing. However, the distinction between dismissals for lack of statutory standing and dismissals for lack of Article III standing does not convince the Court to reconsider the end result of its Order Denying the MTD.

### 1. Hells Canyon

In *Hells Canyon*, the Hells Canyon Preservation Council's ("Council") first lawsuit asserted Wilderness Act and NEPA claims against the government ("HCPC 1"). *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 685 (9th Cir. 2005). At oral argument on the parties' cross-motions for summary judgment, the Council orally withdrew its Wilderness Act claim. The district court subsequently entered summary judgment in favor of the government on the NEPA claim, and found that the cross-motions on the Wilderness Act claim were moot. In its summary judgment order, the district court dismissed the <u>action</u>.

The Council subsequently brought another suit, alleging the same Wilderness Act claim and other causes of action ("HCPC 2"). The district court dismissed the suit, finding that each claim was barred by claim preclusion. The district court held that the Council could have brought the new claims in HCPC 1, and that the court had reached a final judgment on the merits of the Wilderness Act claim in dismissing the <u>action</u> with prejudice in HCPC 1.

The Council appealed, and the Ninth Circuit reversed and remanded. In its ruling, the Ninth Circuit stated:

7

It is certainly true that there was *a* final judgment on the merits of the action in *HCPC I*, as the district court granted the government's motion for summary judgment on [the Council's] NEPA claim. But res judicata doctrine focuses on an identity of *claims*, specifying that 'a valid final adjudication *of a claim* precludes a second action *on that claim* or any part of it. That is to say, the 'final judgment' prong of the res judicata test is claim-specific.

*Id.* at 686 (emphases in original) (internal citations omitted). The Ninth Circuit proceeded to rule that the district court improperly precluded the Wilderness Act claim in HCPC 2 because the Council's oral, pre-judgment withdrawal of the Wilderness Act claim in HCPC 1 effectively excised the claim from HCPC 1. The Wilderness Act claim was, therefore, not included in HCPC 1 when the district court dismissed it.

The Council's Wilderness Act and NEPA claims both involved a certain trail, a Forest Service map showing the trail inside a designated wilderness area, and the Forest Service's failure to submit an environmental impact statement before relocating a portion of the trail. The Ninth Circuit held that, in addition to the district court not having reached a final judgment on the merits of the Wilderness Act claim in HCPC 1, the two claims arose out of different transactional nuclei of facts. The Ninth Circuit drew the distinction that the Wilderness Act claim alleged "parts of the trail remain[ed] inside the Wilderness *after* the relocation," while the NEPA claim related to the Forest Service's "relocating the 1.5-mile stretch of the Lord Flat Trail without filing an environmental impact statement." *Id.* at 690–691 (emphasis in original).

### 2. *No Identity of Claims*

#### a. Different Transactional Nuclei of Facts

The Court finds that there is no identity of claims between FAC Count 7 and SAC Count 5. The Court noted in its Order Denying G&B's MTD that Trustee claims he did not learn of G&B's alleged breach of the relevant standard of care until August 12, 2014. This is the date when Trustee deposed Mr. Polese and learned of G&B's allegedly

8

nonwaivable conflicts of interest stemming from Mr. Polese's involvement in other of Debtor's business transactions. Order Denying at 14:15–20 (DE 277). Mr. Polese's alleged conflicts were new materials facts that were not part of the original nucleus of facts for FAC Count 7. That FAC Count 7 has some facts in common with SAC Count 5 does not prevent a finding that the new facts (the alleged conflicts) are outside the original nucleus for FAC Count 7. Trustee's allegations of Mr. Polese's nonwaivable conflicts of interest prevent G&B from being able to establish the identity-of-claims element necessary for a claim preclusion defense to SAC Count 5.

In *Hells Canyon*, the Ninth Circuit found there was no identity of claims between the Council's Wilderness Act and NEPA claims. Essentially, the claims alleged the government failed to file a certain report relating to the relocation, and that the relocation violated a separate federal law. If those two claims arose out of different transactional nuclei of facts under the Ninth Circuit's test for identity of claims, then this Court now finds Trustee's conspiracy and malpractice claims arise out of different facts. The claims in *Hells Canyon* appear to have been much more closely related to each other and based on the same (and a smaller) set of basic facts than the Trustee's malpractice and conspiracy claims in this instance.

### b. Different Rights and Alleged Infringements of Rights

In further support of the Court's ruling that claim preclusion does not bar Count 5, the Court holds that FAC Count 7 and SAC Count 5 involve entirely different rights. Count 7 involved the Trustee's efforts to recover against parties alleged to have fraudulently transferred assets to the detriment of Debtor's creditors and the estate. It was an action based on rights which the estate's <u>creditors</u> could pursue. Count 5 involves Debtor's right as a <u>client</u> to pursue redress for a professional's alleged pre-bankruptcy breach of the standard of care. The two counts allege infringement of entirely different and unrelated rights.

### c. Prosecution of Count 5 Will Not Impair G&B's Rights

Allowing Trustee to prosecute SAC Count 5 does not "destroy or impair" any of G&B's "rights or interests" from the Court's Order Granting G&B's Motion to Dismiss FAC Count 7. *See Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 690 (9th Cir. 2005) ("Whether there is an identity of claims turns on: [']( 1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action . . . .[']") (quoting *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02) (9th Cir. 1982)). The only right or interest the Court established in its Order Granting G&B's Motion to Dismiss FAC Count 7 was that Trustee could not sue G&B for conspiracy to commit fraudulent transfers under § 544(a). That right will not be impaired by allowing Trustee to prosecute a malpractice claim relying on, at least in part, facts that were unavailable at the time Trustee filed the FAC.

### 3. No Final Judgment on the Merits as to Count 5

"[T]he 'final judgment' prong of the res judicata test is claim-specific." *Hells Canyon*, 403 F.3d at 686. The Court takes this to mean that this Court's finding that there is no identity between the malpractice and conspiracy claims also means that there has been no prior final ruling on the merits of the malpractice claim.[6]

In this case, the Trustee's FAC only pleaded the conspiracy claim against G&B. The Court dismissed that conspiracy claim with prejudice based on the Trustee's lack of statutory standing. That dismissal <u>was</u> a final ruling on the merits of the conspiracy claim. However, the Court granted Trustee leave to file the SAC, and in the SAC Trustee asserted the malpractice claim. The malpractice claim is based at least in part on facts which Trustee did not know when he filed the FAC. These new facts are essential

---

[6] *See Hells Canyon*, 403 F.3d at 686, note 2: "[C]ourts have not always been clear that the phrase 'claims that were raised or could have been raised,' refers to legal theories arising out of the same transactional nucleus of facts, rather than to distinct causes of action. The contrary reading would suggest that any cause of action that could have been joined in the original action would be precluded, a point we rejected over four decades ago." (citation omitted).

to the malpractice claim and would have been of little or no relevance to the conspiracy claim. The Court fails to see how the two claims can arise from the same transactional nucleus of facts when the second claim requires and alleges facts which were irrelevant and/or unknown to the Trustee at the time of filing his FAC. One claim is based in creditors' rights while one is based in debtors' rights against their professionals. Allowing the malpractice claim will not impair any right the Court previously established in dismissing the conspiracy claim. There is no identity of claims, and there was no final ruling on the merits as to the malpractice claim. Claim preclusion does not bar Count 5.

## V. Conclusion

G&B fails to state any grounds on which the Court could or should reconsider its ruling regarding the adequacy of Trustee's pleading his malpractice damages. G&B also fails to convince the Court to reconsider the end result of its Order Denying the MTD. Although G&B correctly notes the legal distinction between Article III standing and statutory standing, claim preclusion does not bar Count 5 because there has been no final ruling on the merits as to the malpractice claim, and the malpractice claim does not share an identity of facts with the previous conspiracy claim. Accordingly,

**IT IS ORDERED** G&B's Motion for Reconsideration is denied.

**So ordered.**

**Dated:   August 19, 2015**

_____
DANIEL P. COLLINS
UNITED STATES BANKRUPTCY JUDGE

COPY of the foregoing mailed by the BNC and/or
sent by auto-generated mail to interested parties.